STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
COUNTY OF DUPAGE

JEFFREY W. ANDERSON, and JEAN M. ANDERSON )
      Plaintiffs, )
v. )
ALLIED VAN LINES, INC., and JACKSON MOVING & STORAGE, )
      Defendants. )

2007L001169

Status Date: 02/04/08
Mgmt Date: No 04/24/08
Assigned To: 2020

**FILED**
Nov 07 2007 - 14:08 PM

Chris Kachiroubas

CLERK OF THE
18TH JUDICIAL CIRCUIT
DU PAGE COUNTY ILLINOIS

## COMPLAINT AT LAW

Now comes Plaintiffs, Jeffrey W. Anderson and Jean M. Anderson (hereinafter "Andersons" collectively), by and through their attorneys, Hinshaw & Culbertson LLP, and for their complaint against the Defendants, Allied Van Lines, Inc. (hereinafter "Allied") and Jackson Moving and Storage (hereinafter "Jackson"), state:

## THE PARTIES

1.    The Plaintiffs, Jeffrey W. Anderson and Jean M. Anders, husband and wife, (hereinafter referred to as "Anderson") are individuals residing at 1724 Eagle Brook Drive, Geneva, Illinois 60134.

2.    Allied Van Lines, Inc. (Allied) is an Illinois for profit corporation in good standing whose principal place of business is located at 700 Oakmont Lane, Westmont, Illinois 60559.

3.    Jackson Moving & Storage (Jackson) is an assumed name of Woodridge Holdings, Inc., an Illinois for profit corporation in good standing whose principal place of business is located at 740 Frontenac Rd., Naperville, Illinois, 60563.

20183553v1 878788

4.    At all times relevant herein, Jackson was the agent of Allied.

## VENUE AND AUTHORIZATON

5.    Venue is proper pursuant to 735 ILCS 5/2-101.

## BACKGROUND

6.    Plaintiffs engaged Jackson to move their possessions from their home in Aurora, Illinois to Pagosa Springs, Colorado (See Orders for Service attached as Exhibit A). As part of this engagement, Jackson arrived at plaintiffs' home in Aurora on or about July 21, 2006, to pack and load Plaintiffs belongings pursuant to the Order for Service.

7.    On or about July 25, 2007, Jackson arrived at Plaintiff's home to pick up the remainder of plaintiffs' possessions that had not been picked up previously. In preparation for this, plaintiffs had packed all their jewelry into a tote bag.

8.    During the loading process, the movers, employees of Jackson, were explicitly instructed that no luggage was to be loaded. After the movers left around 12:00 p.m., Plaintiffs discovered that the tote bag containing the jewelry was missing from the house.

9.    Immediately following their discovery that the tote bag was missing, Plaintiffs called Jackson and informed Jackson that the tote bag had been taken and that they wanted it returned. Plaintiffs then went to Jackson's storage facility where employees of Jackson informed him that they could not find the luggage tote bag. Plaintiffs performed their own search of their possessions in the area where they were stored in Jackson's facility and could not find the luggage tote bag.

10.    Jackson employees reviewed the property inventory listing all the items which were removed from plaintiff's home, and the tote bag was listed in the inventory (Referenced as

2

item #24 in Plaintiff's Statement of Claim attached as Exhibit C). Jackson indicated that they would perform another search of the facility. The next morning they indicated that their search came up negative and that they were taking no further actions regarding the matter.

11.     Plaintiffs contacted the Aurora, Illinois Police Department and filed a police report (Report No. 06-18998). Detective Darryl Moore of the Aurora Police Department was assigned to the investigation (See Police Report attached as Exhibit B). During the course of his investigation, he found the following facts:

       a.     The inventory tag documented as being on the tote bag had been placed on a dust pan;

       b.     The moving crew consisted of three men, one being the supervisor who never returned to work, moved to a new residence with no forwarding address and refused to appear for an interview with Detective Moore;

       c.     The supervisor had a prior criminal record; and

       d.     Jackson had security cameras covering the employee parking lot, but when Detective Moore asked to review the tapes, he was informed that the cameras were not working that day.

12.     Plaintiffs submitted a claim to Jackson in September of 2006 (Exhibit C attached), and attached to that claim an inventory of the missing jewelry (Exhibit D attached). Plaintiffs provided Jackson with receipts for the jewelry in November, 2006.

13.     On or about March 21, 2007, Plaintiffs met with Vivian Dumas, an employee of Jackson, regarding their claim. At that meeting Dumas informed Plaintiffs that the prior employee who was handling the claim had not processed it, and that she was now processing it.

20183553v1 878788

14.     On or about May 7, 2007, Jackson's insurance carrier notified Plaintiffs that the claim was not covered under the insurance policy and that the case was referred back to Jackson for internal follow-up with Allied.  Despite repeated contact by Plaintiffs with Defendant, Plaintiffs have not received any further correspondence or information from defendants.

15.     On or about July 5, 2007, counsel for Plaintiffs delivered via certified mail a demand letter (Exhibit E attached) to the Claims Department for Allied.  Neither Plaintiffs nor counsel for Plaintiffs received a response to that demand letter.

16.     On or about August 31, 2007, counsel for Plaintiffs delivered via certified mail a second demand letter (Exhibit F attached) to the Claims Department for Allied.  Neither Plaintiffs nor counsel for Plaintiffs received a response to that demand letter.

### COUNT I – CONVERSION

17.     Paragraphs 1 through 16 of the Complaint are incorporated as if fully set out here.

18.     On or about July 25, 2006, Plaintiffs were the owners and had right to possession to certain personal property, particularly a tote bag and jewelry contained therein, set out in detail in the attached Exhibit D.

19.     On or about July 25, 2006, Defendants took and unlawfully converted it to their own use and benefit by removing the tote bag from the premises of the Plaintiffs' home, despite explicit instructions that no luggage was to be loaded during the move.

20.     On or about July 25, 2006, when Plaintiffs discovered that Defendants had unlawfully converted Plaintiffs' property, Plaintiffs made oral demands on the Defendant, both over the phone and in person, to return the property.

21.     Shortly thereafter Plaintiffs submitted a claim to Jackson in order to recover the value of the property converted by Defendants.

4

22.    On or about July 5, 2007, counsel for Plaintiffs made written demand on Allied to reimburse plaintiff for the value of the property converted by Defendants.

23.    Despite demand, Defendants have failed and refused to return the property to Plaintiffs or to reimburse Plaintiffs for its value, and has continually withheld possession of the property and refused to reimburse Plaintiffs up through the time of filing this suit.

24.    The Defendants' failure to return the property to Plaintiffs and their continued delay in response to Plaintiffs' claims are vexatious.

25.    The taking and conversion of the property by the Defendants was done willfully with a wanton disregard for Plaintiffs' rights in that Defendants knew at all times relevant herein that Plaintiffs were the title owners of the property. Further, Defendant willfully employed a criminal as a supervisor who supervised this move. After demand was made on Defendants to return the property or reimburse Plaintiffs for its value, Defendant willfully refused to return the property or reimburse Plaintiffs.

26.    At the time and place of the conversion as alleged above, the market value of the property was $66,000.00, for which Plaintiffs are entitled to recover, as well as statutory legal interest on the value of the property from the date of the conversion up to the present.

27.    **WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

a.    For general damages in the sum of $66,532.50, representing the market value of the property at the time of the conversion;

b.    For interest on this amount at the statutory rate of interest from the date of the conversion through the date of judgment;

c.    For damages for the cost of the move in the sum of $9,900.00;

d.    For costs of the suit incurred herein; and

20183553v1 878788

e.     For such other and further relief as the court may deem proper.

## COUNT II – FRAUD

28.     Paragraphs 1 through 27 of the Complaint are incorporated as if fully set out here.

29.     Andersons informed and believe and thereon allege that, at all times herein mentioned, Jackson was an agent of Allied and was at all times acting within the purpose and scope of such agency.

30.     On or about July 25, 2006, Defendants falsely and fraudulently represented to Plaintiffs that they did not have possession of the tote bag of jewelry.

31.     Detective Moore, during his investigation of the report to the Aurora, Illinois Police Department, discovered that the inventory tag which was documented as being on the tote bag was placed on a dust pan.

32.     On or about July 25, 2006, Defendants falsely and fraudulently represented to Plaintiffs that the inventory tag which matched the tote bag belonged on a dust pan and that they did not have possession of the tote bag.

33.     The representations made by Defendants were in fact false.  The true facts were that Defendants had taken possession of the tote bag as the inventory indicates and that Defendants switched the inventory tag from the tote bag to the dust pan.  In doing so Defendants represented that they did not have possession of the tote bag and that the inventory tag did not match the inventory list.

34.     When the Defendants made these representations, they knew them to be false, and these representations were made by Defendants with the intent to defraud and deceive Plaintiffs.

35.     In doing the acts herein alleged, defendants acted with oppression, fraud, and malice.

6

36.    As a proximate result of Defendants' fraud and deceit and the facts herein alleged, Plaintiffs have suffered a loss of all the jewelry contained within the tote bag, by reason of which Plaintiff have been damaged in the sum of $66,000.00.

37.    **WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

a.    For general damages in the sum of $66,532.50, representing the market value of the property at the time of the conversion;

b.    For interest on this amount at the statutory rate of interest from the date of the conversion through the date of judgment;

c.    For damages for the cost of the move in the sum of $9,900.00;

d.    For costs of the suit incurred herein; and

e.    For such other and further relief as the court may deem proper.

## COUNT III – NEGLIGENT HIRING

38.    Paragraphs 1 through 37 of the Complaint are incorporated as if fully set out here.

39.    Defendant Jackson was, at all times relevant to this Complaint, the employer of the supervisor of this particular move.  Plaintiffs are not privy to the supervisor's name, so he will be referred to henceforth as "Supervisor."

40.    On July 25, 2006, at approximately 12:00 p.m. at Plaintiffs' residence, Defendant's employee, Supervisor, injured Plaintiffs, customers of Defendant, in converting Plaintiffs' property and causing damages in an amount equal to the value of the jewelry, approximately $66,000.00.

41.    Upon information and belief, Defendant knew or should have known that its employee had previously engaged in conduct criminal in nature.

20183553v1 878788

42.    Defendant had a duty of reasonable care owed to Plaintiffs to hire a competent, qualified and safe employee because defendant knew or should have known that its employee would come in contact with Plaintiffs and Plaintiffs' possessions through his employment.

43.    Defendant breached its duty of reasonable care by hiring an employee, Supervisor, who was incompetent, unfit and dangerous in that it willfully chose not to ascertain the employee's criminal history or willfully chose to ignore the existence of the employee's criminal history, despite the fact that the employee, in the course of his employment, would be entrusted with the possessions of customers of Jackson and Allied.

44.    The failure of Defendant to exercise reasonable care was a proximate cause of the injuries and loss suffered by Plaintiffs.

45.    **WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

a.    For general damages in the sum of $66,532.50, representing the market value of the property at the time of the conversion;

b.    For interest on this amount at the statutory rate of interest from the date of the conversion through the date of judgment;

c.    For damages for the cost of the move in the sum of $9,900.00;

d.    For costs of the suit incurred herein; and

e.    For such other and further relief as the court may deem proper.

## COUNT IV – NEGLIGENT SUPERVISION

46.    Paragraphs 1 through 45 of the Complaint are incorporated as if fully set out here.

47.    Defendant, due to the nature of the business and the regularity with which customers entrust their possessions to employees of defendant, had a duty to supervise all employees, including employee Supervisor when he was dealing with a customer. Specifically,

8

Defendant had a duty to Plaintiffs to supervise its employees as they removed identified items from Plaintiffs' premises and transported them to Jackson's warehouse to be temporarily stored and in all aspects of moving and controlling Plaintiffs' possessions in order to ensure the safety of Plaintiffs from the injury that Supervisor committed on Plaintiffs as described above.

48.    Defendant breached its duty of supervision over its employees, including the supervisor, to the Plaintiff by not supervising its employees adequately, in that it allowed employees to remove items which were explicitly not to be removed, it failed to supervise its employees through the moving process and particularly as they handled the Plaintiffs' possessions, and it failed to ensure the safety of the Plaintiffs from the injury caused by the Defendant's employee by not ensuring that the cameras covering the employee parking lot were in working order.

49.    Defendant's breach of its supervisory duty to Plaintiffs was a proximate cause of the injuries and loss suffered by plaintiff.

50.    **WHEREFORE**, Plaintiffs pray for judgment against the Defendants as follows:

a.    For general damages in the sum of $66,532.50, representing the market value of the property at the time of the conversion;

b.    For interest on this amount at the statutory rate of interest from the date of the conversion through the date of judgment;

c.    For damages for the cost of the move in the sum of $9,900.00;

d.    For costs of the suit incurred herein; and

e.    For such other and further relief as the court may deem proper.

20183553v1 878788

Dated: _11- 7- 07_____     Attorneys for Plaintiff JEFFREY W. ANDERSON
                                AND JEAN M. ANDERSON

                                By:  HINSHAW & CULBERTSON LLP

                                _____
                                One of Their Attorneys

Daniel M. Purdom
Joseph H. McMahon
Hinshaw & Culbertson LLP
4343 Commerce Court, Suite 415
Lisle, IL 60532-1099
Phone: 630-505-0010
Fax: 630-505-0959
Atty. 36700

20183553v1 878788

ESTIMATE/ORDER FOR SERVICE    *GUARANTEED PRICE PLEDGE*    6-27-06    Ref: _____    1

| Shipper | **JEFF ANDERSON**<br>2355 CHANDLER CT.<br>AURORA, IL  60502<br>898-3601 | Consignee | SAME<br><br>PAGOSA SPRINGS, CO |

| Orig Agent | Jackson Moving Services<br>740 FRONTENAC RD.<br>Naperville, Illinois  60563<br>USA<br>630.357.4400    630.420.7476 | Carrier | ALLIED VAN LINES, INC.<br>P.O. Box 4403<br>Chicago, IL  60680<br>(630) 717-3000<br>MC-15735 |

Pack Date _____
Load Date 7/24-7/24    Delivery 7/28-8/6
    Unpacking _____    7.6y 4

THIS GUARANTEED PRICE PLEDGE is based on articles and services listed. In the event unknown additional services are required to effect delivery, these costs will be in addition to the amount stated below and will be billed to the shipper 30 days after delivery. Such services and applicable charges will be based upon the tariff rates in effect on the date of this estimate.

    BASED ON TARIFF  T.P.G. , Effective 1/ 1/2005

TRANSPORTATION (  2,909 lb, 1159 miles):

---------$  2491.92

CUSTOMER'S DECLARATION of VALUE
    I declare this shipment to be released at a value not exceeding 60 cents per pound per article. I have selected this option from those shown above. If any article is lost, destroyed or damaged while in your mover's custody, your mover's liability is limited to the actual weight of the lost, destroyed or damaged article multiplied by 60 cents per pound per article. This is the basic liability level and is provided at no charge. It is considerably less than the average value of household goods.

_____    _____
        *Customer*                    *Date*
Valuation is not insurance, it is a limit on the carrier's liability for loss of or damage to your goods while they are in its custody and control. In order to validate your selection, you must sign above and write below, the words "60 cents per pound"

    *The value of my shipment is:*
Basic Coverage (60 cents per pound per article)    ---------$    0.00
Full Value    (minimum value  15,000)    1. $    0 DEDUCTIBLE    181.00 /90
                                          2. $ 250 Deductible    163.00 /30
                                          3. $ 500 Deductible    145.00 /17

                    TOTAL GUARANTEED PRICE ............ $  2491.92
            X    *NOT  TO  Exceed* X

Guaranteed Rate Reduction: If actual weight is less than estimated weight of  2,909 lbs., the GPP price will be reduced by $ 32.45 per cwt for the difference between actual and estimated weights.

Remarks _____
_____

METHOD OF PAYMENT:    COD ____    PPD ____    NAT'L ACCT ____    CREDIT CARD _____
    All COD charges are to be paid in cash, certified check, traveler's check or bank check (per tariff).

I have received a copy of 1) Estimate, 2) Your Rights and Responsibilities When You Move, 3) Inventory of Items Valued in Excess of $100 Per Pound Per Article (High Value Inventory) form, 4) Here's what you need to know about placing a value on your shipment before you move brochure.

ESTIMATE/ORDER FOR SERVICE                          6-27-06     Ref: _____      1

| Shipper | **JEFF ANDERSON**<br>2355 CHANDLER CT.<br>AURORA, IL  60502<br>898-3601 | Consignee | SAME<br><br>PAGOSA SPRINGS, CO |
|---|---|---|---|
| Orig Agent | Jackson Moving Services<br>740 FRONTENAC RD.<br>Naperville, Illinois  60563<br>USA<br>630.357.4400    630.420.7476 | Carrier | ALLIED VAN LINES, INC.<br>P.O. Box 4403<br>Chicago, IL  60680<br>(630) 717-3000<br>MC-15735 |

Pack Date
Load Date    7/2 l                      Delivery
                                        Unpacking                                      7.6y 4

IMPORTANT NOTICE: This estimate covers only the articles and services listed. It is not a guarantee that the actual
charges will not exceed the amount of the estimate. The carrier is required by law to collect transportation and other
incidental charges computed on the basis of rates shown in their lawfully published tariffs, on non-binding estimates,
regardless of prior rate quotations or estimates made by the carrier or its agents.

CUSTOMER'S DECLARATION of VALUE
(1) Basic Coverage (30 cents per pound per article)                    --------$     0.00
(2) Depreciated Value (min value $ 18,300)                                            91.50
(3) Full Value    (minimum value  36,500)    1. $    0 DEDUCTIBLE     273.75
                                             2. $  250 Deductible     146.00
                                             3. $  500 Deductible      91.25
    I declare this shipment to be released at a value not exceeding 30 cents per pound per article. I have
selected this option from those shown above.

        Customer                                    Date
Valuation is not insurance, it is a limit on the carrier's liability for loss of or damage to your goods
while they are in its custody and control. In order to validate your selection, you must sign above.

CARTONS, PACKING & UNPACKING:  *Pack Beds*

|  | Container | | | Packing | | | Unpacking | | |
|---|---|---|---|---|---|---|---|---|---|
|  | Qty | Rate | Total | Qty | Rate | Total | Qty | Rate | Total |
| Mattress Single | 2 | 7.45 | 14.90 | 2 | 7.90 | 15.80 | 0 | 2.45 | 0.00 |
| Mattress Qn/King | 2 | 14.95 | 29.90 | 2 | .50 | 25.00 | 0 | 3.60 | 0.00 |

CONTAINERS
Unit Packing      Orig.                    $   44.80                  =    44.80
                                          $   40.80                  =    40.80
                                                                 --------$    85.60
STORAGE CHARGES:
Warehouse Pickup—                 9120    x 12.50/100             =   1140.00
Warehouse Hand'l                  9120    x  4.00/100             =    364.80
Monthly Stg.                      9120 x (12) x  3.50/100 *(3/9.20   =   3830.40
                                                       per mo)*   --------$   5335.20
MISCELLANEOUS SERVICES:            *✗ See Below←*

Add'l  Services    Orig.              $   389.00                 =    389.00
                                                                 --------$    389.00

              TOTAL NON BINDING ESTIMATED COST .. $  5809.80

emarks  *Driven collect ?*

SHIPPER INVENTORY                                    6-27-06    Ref: _____    1

Shipper    **JEFF ANDERSON**                    Consignee    SAME
           2355 CHANDLER CT.
           AURORA, IL  60502                                  PAGOSA SPRINGS, CO
           898-3601

Orig Agent  Jackson Moving Services            Carrier      ALLIED VAN LINES, INC.
            740 FRONTENAC RD.                               P.O. Box 4403
            Naperville, Illinois  60563                     Chicago, IL  60680
            USA                                             (630) 717-3000
            630.357.4400    630.420.7476                    MC-15735

Pack Date
Load Date                                      Delivery
                                               Unpacking                           7.6y 4

| QTY ARTICLE              ROAD | ft3 | QTY ARTICLE | ft3 |
|---|---|---|---|
| **STORAGE** | | | |
| 1 Barbecue | 10.0 | 1 Bed, Single | 40.0 |
| 1 Bed, Queen | 65.0 | 2 Card Table | 2.0 |
| 4 Chair, Folding | 1.0 | 10 Chair, Metal | 3.0 |
| 1 Chair | 8.0 | 1 Chair,Occasional | 15.0 |
| 1 Chaise Lounge | 5.0 | 2 Cooler | 3.0 |
| 1 Desk | 43.0 | 1 Exercise Equip. | 21.0 |
| 1 Fan | 5.0 | 1 File Cab, 2-3 dr | 10.0 |
| 1 Freezer | 35.0 | 1 Garden Hose/Tool | 21.0 |
| 1 Glider - Settee | 10.0 | 2 Golf Bag & Clubs | 4.0 |
| 4 Ladder | 4.0 | 1 Ladder, Extend | 8.0 |
| 1 Ottoman | 5.0 | 1 Picnic Table | 20.0 |
| 1 Refrig., Large | 60.0 | 1 Sofa, Loveseat | 30.0 |
| 2 Speaker | 14.0 | 1 Table, Small | 2.0 |
| 1 Table, End | 5.0 | 1 Table Saw | 20.0 |
| 1 TV Portable | 7.0 | 1 Television | 20.0 |
| 1 TV Big Screen | 50.0 | 2 Toolbox | 5.0 |
| 1 Tool Chest | 15.0 | 1 Umbrella | 3.0 |
| 1 Vacuum Cleaner | 5.0 | 1 Wall Unit | 103.0 |
| 1 Wheelbarrow | 5.0 | 14 Carton, 1.5  PBO | 1.5 |
| 40 Carton, 3.0  PBO | 2.0 | 16 Carton, 4.5  PBO | 4.5 |
| 4 Carton, 6.0  PBO | 6.0 | 7 Dishpack    PBO | 10.0 |
| 10 Carton,Books PBO | 8.0 | 21 Mirror Ctn.  PBO | 2.0 |
| 2 Mattress Single | | 2 Mattress Qn/King | |
| 1 SCALE | 5.0 | 1 CLOCK | 20.0 |
| 2 WALL UNIT | 3.0 | 1 SMOKER | 10.0 |
| 1 TABLE | 20.0 | 1 CAGE | 3.0 |
| 17 BOX | 2.0 | 4 MED BOX | 4.0 |
| 1 LG BOX | 8.0 | 30 BIN | 3.0 |
| 6 CHAIR | 5.0 | | |
| 1403.0 ft3    9120 lb | | | 248 |
| **CO** | | | |
| 1 Chair,Occasional | 15.0 | 1 Chest | 12.0 |
| 1 Exercise Equip. | 31.0 | 1 Golf Bag & Clubs | 4.0 |
| 1 Ironing Board | 2.0 | 1 Snow Blower | 24.0 |
| 1 Vacuum Cleaner | 5.0 | 3 Carton, 1.5  PBO | 1.5 |
| 23 Carton, 3.0  PBO | 3.0 | 4 Carton, 4.5  PBO | 4.5 |
| 3 Carton, 6.0  PBO | 6.0 | 2 Dishpack    PBO | 10.0 |
| 22 Wardrobe    PBO | 10.0 | 1 WHEELCHAIR | 5.0 |
| 447.5 ft3    2909 lb | | | 65 |
| ROAD    Subtotals | | 1850.5 ft3    12028 lb | 313 |

CONTAINER SUMMARY
2 Mattress Single                    2 Mattress Qn/King                    4

AUG.14.2007   7:59AM   APD RECORDS                                          NO.335   P.6

## AURORA POLICE DEPARTMENT
### INCIDENT REPORT

| TYPE OF REPORT | REPORT NUMBER |
|---|---|
| OFFENSE | **2006-018998** |

| REPORT TITLE | | TIME REPORTED | DATE REPORTED |
|---|---|---|---|
| THEFT OVER $300 | | 19.45 Hours | 07/25/2006 |

| OTHER CRIMINAL ACTS | ADDRESS NAME |
|---|---|
| | |

| LOCATION/ADDRESS OF OCCURRENCE | COUNTY | LOCATION TYPE |
|---|---|---|
| 2355 CHANDLER CT | DU PAGE | RESIDENCE (SINGLE FAMILY) |

| TIME OCCURRED | TIME OCCURRED TO | DATE OCCURRED | DATE OCCURRED TO | TOTAL LOSS | JUVENILE INVOLVED? |
|---|---|---|---|---|---|
| 10:45 Hours | 14:45 Hours | 07/25/2006 | 07/25/2006 | $20,050.00 | NO |

## METHOD OF OPERATION

| POINT OF ENTRY | POINT OF EXIT | MEANS OF GAINING ENTRY / CAUSING DAMAGE |
|---|---|---|
| UNKNOWN | UNKNOWN | UNKNOWN |
| TOOL / OBJECT / WEAPON USED | TARGET OF OFFENSE | SECURITY DEFEATED TO GAIN ENTRY |
| UNKNOWN | UNKNOWN | UNKNOWN |
| LIGHTING CONDITIONS | MISCELLANEOUS | CIRCUMSTANCES |
| DAYLIGHT | UNKNOWN | UNKNOWN |

## PERSONS

| PERSON TYPE | NAME | | | SEX | RACE | DATE OF BIRTH | AGE |
|---|---|---|---|---|---|---|---|
| | | RES PHONE | BUS PHONE | EXT | OTHER | | |

| SYNOPSIS OF INVOLVEMENT |
|---|
| PROPERTY OWNER |

| VICTIM TYPE | INJURY TYPE | SEVERITY |
|---|---|---|
| INDIVIDUAL | NOT APPLICABLE | NONE |
| MEDICAL TREATMENT | HOSPITAL | DOCTOR |
| DNA | | DNA |

## PROPERTY

| LOSS STATUS | QUANTITY | ITEM | | SERIAL NUMBER |
|---|---|---|---|---|
| STOLEN | 0 | JEWELRY | | |
| COLOR | MANUFACTURER | | MODEL | OWNER APPLIED NUMBER |
| | VARIOUS | | | |

| DESCRIPTION | | DAMAGE |
|---|---|---|
| NUMEROUS ITEMS OF MISCELLANEOUS WOMAN'S JEWELRY , WOMAN'S , | | |

| EVIDENCE | TO BE PROCESSED | VALUE | DISPOSITION | RETURNED TO |
|---|---|---|---|---|
| NO | | $20000.00 | | |

| LOSS STATUS | QUANTITY | ITEM | | SERIAL NUMBER |
|---|---|---|---|---|
| STOLEN | 1 EA. | LUGGAGE | | |
| COLOR | MANUFACTURER | | MODEL | OWNER APPLIED NUMBER |
| GRAY | UNKNOWN | | UNKNOWN | |

| DESCRIPTION | | DAMAGE |
|---|---|---|
| TOTE BAG | | |

| EVIDENCE | TO BE PROCESSED | VALUE | DISPOSITION | RETURNED TO |
|---|---|---|---|---|
| NO | | $50.00 | | |

| REPORTING OFFICER | ASSISTING OFFICER | STATUS | REVIEWING SUPERVISOR | PAGE # |
|---|---|---|---|---|
| C. BEKIELEWSKI, 277 | APD DESK OFFICER | 02 | J. TATE, 405 | 1 of 2 |

PLAINTIFF'S EXHIBIT

tabbies

B

CERTIFIED

| AURORA POLICE DEPARTMENT NARRATIVE INFORMATION | REPORT NUMBER 2006-018998 |
|---|---|

**NARRATIVE INFORMATION**

The victim (█████████) came to the A.P.D front desk to report the theft of all of his wife's jewelry. ████████ explained that he and his wife are moving from their home (█████████████) to their new home in R████ ████████████████████ said that he contracted with a moving company (Allied/Jackson Moving and Storage) to move his belongings and that today, he, his wife and three unknown employees from the moving company packed and removed all of their belongings to be relocated to their new home. ████████ said that he intended to take the bag containing his wife's jewelry with him and not to have it shipped in the moving truck, but that he forgot to put the bag in his vehicle.

████████ said that a few hours after leaving their old home, he and his wife realized that they had not taken the bag containing the jewelry and immediately telephoned the moving company. ████████ said he spoke with an official at Jackson Moving, who advised that the bag had apparently been loaded onto the moving truck, as it was listed on their inventory list. ████████ said that he and his wife then drove to Jackson Moving (740 Frontenac Rd., Naperville, IL., 60563) to retrieve the bag. ████████ said that he was then advised by Jackson Moving employees that they could not locate the bag amongst ████████ belongings. ████████ said that he and his wife were then allowed to search for the bag, but that they also were unable to locate the bag.

████████ said that he has filed a loss claim with Jackson Moving, who advised them to report the theft to the Police (Note ████████ contacted the Naperville Police, but he was told that the theft most likely occurred in Aurora, therefore the report would have to be made with A.P.D.)

| REPORTING OFFICER C. BEKIELEWSKI, 277 | ASSISTING OFFICER APD DESK OFFICER | STATUS 02 | REVIEWING SUPERVISOR J. TATE, 405 | PAGE # 2 of 2 |
|---|---|---|---|---|

CERTIFIED

## AURORA POLICE DEPARTMENT
### INCIDENT REPORT

| TYPE OF REPORT | REPORT NUMBER |
|---|---|
| OFFENSE SUPPLEMENTAL | **2006-018998/1** |

| REPORT TITLE | TIME REPORTED | DATE REPORTED |
|---|---|---|
| THEFT OVER $300 | 10:00 Hours | 07/28/2006 |

## PERSONS

| PERSON TYPE | NAME | SEX | RACE | DATE OF BIRTH | AGE |
|---|---|---|---|---|---|
| | | | | | |

| ADDRESS | HOME PHONE | BUS PHONE | EXT | OTHER |
|---|---|---|---|---|
| | | | | |

| DRIVERS LICENSE | DL STATE | SOCIAL SECURITY NUMBER |
|---|---|---|
| | | |

SYNOPSIS OF INVOLVEMENT

| VICTIM TYPE | INJURY TYPE | SEVERITY |
|---|---|---|
| INDIVIDUAL | NOT APPLICABLE | NONE |

| MEDICAL TREATMENT | HOSPITAL | DOCTOR |
|---|---|---|
| | | |

| PERSON TYPE | NAME | SEX | RACE | DATE OF BIRTH | AGE |
|---|---|---|---|---|---|
| | | | | | |

| ADDRESS | HOME PHONE | BUS PHONE | EXT | OTHER |
|---|---|---|---|---|
| 2908 | | | | |

| HEIGHT | WEIGHT | HAIR COLOR | EYE | | SPEECH |
|---|---|---|---|---|---|
| | | | | | |

| | GLASSES | HANDED | TEETH |
|---|---|---|---|
| | | | |

SCARS / MARKS / TATTOOS

| DRIVERS LICENSE | DL STATE | SOCIAL SECURITY NUMBER | RELATIONSHIP TO VICTIM |
|---|---|---|---|
| | | | |

| PECULIARITIES / MEDICAL CONDITIONS | CLOTHING |
|---|---|
| | |

| SUBJECT'S WORDS | SUBJECT'S ACTIONS |
|---|---|
| | |

SYNOPSIS OF INVOLVEMENT

| | HOME PHONE | PHONE | EXT | OTHER |
|---|---|---|---|---|
| | | | | |

| | | | SPEECH |
|---|---|---|---|
| | | | |

| | | HANDED | TEETH |
|---|---|---|---|
| | | | |

SCARS / MARKS / TATTOOS

| DRIVERS LICENSE | DL STATE | SOCIAL SECURITY NUMBER | RELATIONSHIP TO VICTIM |
|---|---|---|---|
| | | | |

| PECULIARITIES / MEDICAL CONDITIONS | CLOTHING |
|---|---|
| | |

| SUBJECT'S WORDS | SUBJECT'S ACTIONS |
|---|---|
| | |

SYNOPSIS OF INVOLVEMENT

| REPORTING OFFICER | ASSISTING OFFICER | STATUS | REVIEWING SUPERVISOR | PAGE # |
|---|---|---|---|---|
| D. MOORE, 320 | | | J. ROSE, 408 | 1 of 3 |

CERTIFIED

AUG.14.2007   8:00AM   A P D RECORDS                              NO.335   P.9

## AURORA POLICE DEPARTMENT
### INCIDENT REPORT

| REPORT NUMBER |
|---|
| 2006-018998/1 |

**PERSONS**

| | | | RES PHONE | BUS PHONE | | EXT |
|---|---|---|---|---|---|---|
| | | | | | | SPEECH |
| HEIGHT | WEIGHT | | | | | TEETH |

| SCARS / MARKS / TATTOOS |
|---|

| DRIVERS LICENSE | DL STATE | SOCIAL SECURITY NUMBER | RELATIONSHIP TO VICTIM |
|---|---|---|---|
| PECULIARITIES / MEDICAL CONDITIONS | | | CLOTHING |
| SUBJECT'S WORDS | | | SUBJECT'S ACTIONS |
| SYNOPSIS OF INVOLVEMENT | | | |

| REPORTING OFFICER | ASSISTING OFFICER | STATUS | REVIEWING SUPERVISOR | PAGE # |
|---|---|---|---|---|
| D. MOORE, 320 | | | J. ROSE, 408 | 2 of 3 |

CERTIFIED

AUG.14.2007   8:00AM   A P D  RECORDS                                       NO. 335   P.10

 **AURORA POLICE DEPARTMENT**
**NARRATIVE INFORMATION**

| REPORT NUMBER |
| --- |
| 2006-018998/1 |

NARRATIVE INFORMATION

On 7/28/06 1000 hrs, I spoke to victim, ███████ and ███████ ref case. He advised the missing bag still has not been found ████ provided me with contact info at the moving company and advised me that he thinks the missing bag is tagged number 23 or 24.

07/29/06 1110, I spoke to ███████, manager of moving co. He advised the bag has not been located yet. He advised he has already spoken to employees, and they deny the theft.

07/29/06 1130 I spoke to the victim. I asked him to make me an itemized list of the stolen items. He advised there were approx 42 individual pieces of jewelry worth $40,000 dollars. He advised the item number for the missing bag was #24. He stated his insurance co is State Farm, but he was only insured for $2500 dollars.

08/04/06 1430 I spoke to a ███████, vice president of Jackson Movers. He provided me with list of suspects (movers) with there information. I also spoke to other supervisors ref suspects, and ref the day of this incident. I checked out the area where items are stored, and inquired about any video of the parking lot area, where employees park, and discovered there is a camera in place. I also set up interview times with two of the three suspects. Suspect ███████ is leaving for ████ Tuesday. Suspect ███████ advised me that he would come in on 08/06, for an interview. He advised me he would call to set up a time, which would depend on what time he got off of work.

08/06/06, 1000 hrs. I interviewed suspects ███████ and ███████. Before each interview I read the suspects their Miranda Rights. I then had them read them, and sign their name to indicate they understood their rights, which they did. No statements of admissions were obtained, and no helpful info was discovered. They both advised that they did not take the bag, or jewelry, and had no idea who did.

Suspect R█████ did not show up for his interview on 08/06, and didn't call me to advise a time he planned on coming in.

08/10/06, 1830, I spoke to ███████, Jackson moving, who advised since Sunday, 08/06/06, ███████ had not showed up for work. Supervisors have attempted numerous times to call him, with negative results. He has missed a total of 4 days of work. He also advised ███ was in the process of moving. He stated that the surveillance system had malfunctioned the day of this incident, and did not capture any video

I will attempt to find ███████ new location.

| REPORTING OFFICER | ASSISTING OFFICER | STATUS | REVIEWING SUPERVISOR | PAGE # |
| --- | --- | --- | --- | --- |
| D. MOORE, 320 | | | J. ROSE, 408 | 3 of 3 |

CERTIFIED

AUG.14.2007   8:00AM   A P D RECORDS                    NO. 335   P.11

| AURORA POLICE DEPARTMENT INCIDENT REPORT | TYPE OF REPORT OFFENSE SUPPLEMENTAL | REPORT NUMBER 2006-018998/2 |
|---|---|---|

| REPORT TITLE THEFT OVER $300 | | TIME REPORTED 16:00 Hours | DATE REPORTED 09/16/2006 |

## PERSONS

| NAME | | | | | | | M | W | HOSPITAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | BUS PHONE | EXT | OTHER | | |

| DRIVERS LICENSE | DL STATE | SOCIAL SECURITY NUMBER | | |
|---|---|---|---|---|

SYNOPSIS OF INVOLVEMENT

| VICTIM TYPE | INJURY TYPE | SEVERITY |
|---|---|---|
| MEDICAL TREATMENT | HOSPITAL | DOCTOR |

| | | | | EYES | SPEECH |
|---|---|---|---|---|---|
| | | | | HANDED | TEETH |

| DRIVERS LICENSE | DL STATE | SOCIAL SECURITY NUMBER | RELATIONSHIP TO VICTIM STRANGER |
|---|---|---|---|
| PECULIARITIES / MEDICAL CONDITIONS | | | CLOTHING |
| SUBJECT'S WORDS | | | SUBJECT'S ACTIONS |

SYNOPSIS OF INVOLVEMENT

| REPORTING OFFICER D. MOORE, 320 | ASSISTING OFFICER | STATUS 09 | REVIEWING SUPERVISOR J. ROSE, 408 | PAGE # 1 of 2 |
|---|---|---|---|---|

CERTIFIED

AUG.14.2007  8:00AM  A P D  RECORDS                                    NO.335   P.12

 **AURORA POLICE DEPARTMENT**
**NARRATIVE INFORMATION**

REPORT NUMBER
**2006-018998/2**

NARRATIVE INFORMATION

Reference attempted interview of suspect

On 08/10/06, I was advised by ▮▮▮▮▮, of Jackson Moving, that suspect ▮▮▮▮▮▮▮▮ had not showed up for work since he missed his interview time with me. I attempted to call ▮▮▮ but discovered his phone was no longer in service. I was also advised that ▮▮▮ was in the process of moving to an unknown location.

On 08/26/06, I obtained a phone number for ▮▮▮ from a manager at the Beltman Group, a company I discovered ▮▮▮ had just applied with. He also advised ▮▮▮ was not hired, because he discovered he had a felony criminal background.

I spoke to ▮▮▮ on the phone, who in summary stated he had nothing to do with any missing jewelry, and advised he would not consent to an interview. I reminded him that he had agreed to be interviewed when I last spoke to him. He advised me that he did not.

On 08/31/06, I spoke to detectives from ▮▮▮▮▮▮▮▮▮▮▮▮ near where the suspect resided. They provided me with two of the most likely pawn shops in that area, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ I contacted these shops, with negative results.

On 09/02/06, I spoke to victim ▮▮▮▮▮▮▮▮, and updated him on the status of this case.

On 09/05/06, I left a message for the suspect to call me, which he failed to do.

At this time suspect ▮▮▮▮▮▮▮ refuses to cooperate with this investigation, and there is no evidence for his arrest.

This case will be administratively closed.

| REPORTING OFFICER | ASSISTING OFFICER | STATUS | REVIEWING SUPERVISOR | PAGE # |
|---|---|---|---|---|
| D. MOORE, 320 | | 09 | J. ROSE, 408 | 2 of 2 |

CERTIFIED

# *ALLIED®* STATEMENT OF CLAIM

JACKSON MOVING & STORAGE
740 Frontenac Road
Naperville, IL 60563
Attn: Claims Department

Phone Number:
(800) 323-7800 x 8133
Fax Number:
(630) 420-7476

Registration Number

① 679057

CUSTOMER: BEFORE COMPLETING THIS FORM PLEASE READ ATTACHED INSTRUCTIONS. REPORT LISTING CLAIM MUST BE RECEIVED WITHIN 9 MONTHS OF THE DELIVERY DATE.

② Customer Name: JEFF ANDERSON    E-Mail address: JWAZCOO@SBCGLOBAL.NET

③ New Address: 22 FIRESIDE    City: PAGOSA SPRINGS State: CO Zip: 81147

③A Mailing Address: P.O. BOX 2457    City: PAGOSA SPRINGS State: CO Zip: 81147-2457
(If different than new address)

④ Old Address: 2355 CHANDLER COURT    City: AURORA    State: IL Zip: 60504

⑤ Home Telephone No. (    )    Work Telephone NO. (    )  N/A

Fax No. (    )    Cell Phone No. (630) 605-8221

⑥ Load Date: 7/25/06    Delivery Date: 8/15/06

Was shipment in storage?  ☐ Yes ☐ No  If yes, Facility name and location _____

⑦ Valuation Declared
  ☐ 60¢/lb./article    ☐ ECP No Deductible    ☐ ECP Deductible
  $ _____    $ _____

⑧ Did employer pay for move?  ☐ Yes ☒ No  If yes, name of employer _____

| ALLIED USE ONLY | COL. 1 INVENTORY ITEM NO. | COL. 2 DESCRIPTION OF ARTICLE | COL. 3 ENTER "MISSING" OR DAMAGE DESCRIPTION | COL. 4 WGT. OF ARTICLE (LBS.) | COL. 5 FROM WHOM, WHERE AND DATE PURCHASED (INDICATE NEW OR USED) | $ COL. 6 COST WHEN ORIGNALLY PURCHASED | $ COL. 7 REPLACE-MENT COST TODAY | $ COL. 8 AMOUNT CLAIMED (See Note Below) | ALLIED USE ONLY |
|---|---|---|---|---|---|---|---|---|---|
|  | 24 | CARRY ON BAG | STOLEN - CONTAINS JEWELRY | 25 | SEE ATTACHED EXCEL SPREADSHEET |  |  | $66,532.00 |  |
|  | 113 | (2) GARBAGE CANS | DAMAGED - WHEEL BROKEN | 10 | HOME DEPOT NEW | $20/EA $40 TOTAL | $22/EA $44 TOTAL | $22/EA $44 TOTAL |  |
|  | 126 | FAN | DAMAGED - SWITCH BROKEN OFF - FACEPLATE MISSING | 4 | HOME DEPOT NEW | $25.00 | $25.00 | $25.00 |  |
|  | 127 | BALANCE BEAM SCALE | DAMAGED - LEVEL INDICATOR MISSING - SCRATCHED | 40 | SERVICE MERCHANDISE NEW | $150.00 | $120.00 | $120.00 |  |
|  | 75 | FLOOR FAN | DAMAGED - MISSING PARTS - UNABLE TO ASSEMBLE | 10 | HOME DEPOT NEW | $50.00 | $55.00 | $55.00 |  |

THE FOREGOING STATEMENT OF FACTS IS HEREBY CERTIFIED AS CORRECT

CUSTOMER SIGNATURE
*Jeffrey W. Anderson*

DATE COMPLETED

⑨ TOTAL CLAIMED
$66,826.00

NOTE: If the item is repairable but you will accept a sum of cash in lieu of repairs, enter the amount you are requesting. If repairs are requested or the word "repair", arrangements may be made to inspect the claimed item.

Failure to complete all information required may delay the processing of your claim.

Comments: _____

If you feel that there is additional information needed to properly document your claim, please provide a detailed explanation.



PLAINTIFF'S
EXHIBIT
C

# Jean Anderson Stolen Jewelry List

| Item Description | Purchase Info | Original Value | Current Value | Claimed Value |
|---|---|---|---|---|
| Ebel Beluga Ladies Watch (solid gold band/diamond face) | Gift, 1994, new | $8,200.00 | $9,950.00 | $9,950.00 |
| Tahitian Black Pearl Necklace | Jared's, 2001?, new | $6,000.00 | $6,900.00 | $6,900.00 |
| 1 Carat Diamond Stud Earrings | S.G. Nelson, 1993?, new | $4,000.00 | $7,000.00 | $7,000.00 |
| Emerald and Diamond Tennis Bracelet | S.G. Nelson, 1997?, new | $2,000.00 | $2,800.00 | $2,800.00 |
| Diamond Cocktail Ring | Bailey, Banks & Biddle, 1985?, new | $1,500.00 | $3,450.00 | $3,450.00 |
| Seiko Diamond Ladies watch (silver band) | Fey & Co. 1994?, new | $1,500.00 | $2,625.00 | $2,625.00 |
| Pearl Double Strand Necklace (heirloom) | mother's, 1940, new | $1,500.00 | $6,000.00 | $6,000.00 |
| Gold Necklace (solid) | S.G. Nelson, 1996?, new | $1,250.00 | $2,500.00 | $2,500.00 |
| Emerald Necklace and Earring set (natural) | Gift, 1976?, new | $1,000.00 | $3,000.00 | $3,000.00 |
| Gold Earrings (3 sets) | Bananas, 1992, new | $1,000.00 | $1,500.00 | $1,500.00 |
| Omega Diamond Ladies Watch (gold band) | Gift, 1974?, new | $750.00 | $2,250.00 | $2,250.00 |
| Gold Charm Bracelet (heirloom) | Scotland, ????, antique | $750.00 | $750.00 | $750.00 |
| Grey Star Sapphire gold necklace | Gift, 1968?, new | $700.00 | $2,100.00 | $2,100.00 |
| Tahitian Black Pearl Earrings | Jared's, 2001?, new | $600.00 | $720.00 | $720.00 |
| Emerald Necklace and Earring set (cultured) | Rogers & Holland, 1995?, new | $600.00 | $1,050.00 | $1,050.00 |
| Jade Necklaces (2) (gold chains) | Jared's, 2002?, new | $600.00 | $672.00 | $672.00 |
| Blue Topaz and Diamond set (necklace, earrings, ring) | Gift, 1983?, new | $500.00 | $2,000.00 | $2,000.00 |
| Gold Wedding Band (heirloom) | Scotland, 1800's, antique | $500.00 | $500.00 | $500.00 |
| Diamond Heart necklace (heirloom) | mother's, ????, antique | $500.00 | $1,500.00 | $1,500.00 |
| Sterling Silver Charm Bracelet | Gift, 1960?, new | $500.00 | $500.00 | $500.00 |
| Sterling Silver Topaz Pin (heirloom) | Scotland ??? antique | $500.00 | $500.00 | $500.00 |
| Jade Bracelet | Jared's, 2002?, new | $500.00 | $560.00 | $560.00 |
| Antique Ruby and Diamond Earrings | England, 1969, antique | $300.00 | $900.00 | $900.00 |
| Ruby and Diamond Stud Earrings | Gift, 1978?, new | $300.00 | $900.00 | $900.00 |
| Jade Earrings | Jared's, 2002?, new | $300.00 | $360.00 | $360.00 |
| Cameo Necklace and Earring set (from Scotland) | Scotland, 1969, new | $250.00 | $750.00 | $750.00 |
| Pearl Bracelet (silver) | Gift, 1988?, new | $250.00 | $375.00 | $375.00 |
| Tahitian Teardrop Black Pearl Necklace | Tahiti, 2005, new | $250.00 | $250.00 | $250.00 |
| Pearl Cocktail ring (silver) | Florida, 1985?, new | $250.00 | $375.00 | $375.00 |
| Gold Charm Bracelet | Gift, 1967, new | $200.00 | $600.00 | $600.00 |
| Green agatite pendant earrings | Durango, 1993?, new | $200.00 | $280.00 | $280.00 |
| Silver Coral Earrings | New Mexico, 2002?, new | $200.00 | $240.00 | $240.00 |
| Spiny Purple Oyster Shell Earrings and Necklace set | Durango, 2004?, new | $200.00 | $240.00 | $240.00 |
| Ring, Mother of Pearl | Gift, 1977?, new | $200.00 | $600.00 | $600.00 |



PLAINTIFF'S EXHIBIT

tabbies

# Jean Anderson Stolen Jewelry List

| | | | | |
|---|---|---|---|---|
| Turquoise Earrings (silver and black) | New Mexico, 2003?, new | $180.00 | $198.00 | $198.00 |
| Pearl Cocktail ring (gold) | Marshall Field's, 1982?, new | $150.00 | $225.00 | $225.00 |
| Ring, Coral | Gift, 1985?, new | $150.00 | $262.50 | $262.50 |
| Lindy Star Sapphire Ring with Diamonds | Gift, 1967, new | $125.00 | $375.00 | $375.00 |
| Turquoise Choker (heirloom) | Gift, 1971? new | $125.00 | $375.00 | $375.00 |
| Turquoise Rings (3) | Gift, 1972?, new | $100.00 | $300.00 | $300.00 |
| Tahitian Teardrop Black Pearl Earrings | Tahiti, 2005, new | $100.00 | $100.00 | $100.00 |
| **Total** | | **$38,780.00** | **$66,532.50** | **$66,532.50** |

# HINSHAW

Daniel M. Purdom
630-505-4110
dpurdom@hinshawlaw.com

July 5, 2007

ATTORNEYS AT LAW

6343 Commerce Court
Suite 455
Lisle, IL 60532-1999

630-505-8010
630-505-0956 (fax)
www.hinshawlaw.com

*Certified Mail*
*Return Receipt Requested*

Allied Van Lines
Claims Services Department
700 Oakmont Lane
Westmont, IL 60559

     Re:   *Jeffrey W. and Jean M. Anderson Claim*

Dear Sir/Madam:

    We have been retained to represent Jeffrey W. and Jean M. Anderson. Mr. and Mrs. Anderson engaged Jackson Moving & Storage, an agent of Allied Van Lines, for a move from Aurora, Illinois to Colorado in July of 2006. During the loading process, the movers were explicitly told that no luggage was to be loaded. After all the boxes had been loaded and the movers left, Mr. Anderson discovered that a tote bag which contained a substantial amount of valuable jewelry was missing.

    Mr. and Mrs. Anderson immediately contacted Jackson Moving & Storage and informed them that the tote bag had been loaded in error. Although Jackson indicated to Mr. Anderson that they were unable to locate the tote bag, a review of the documents listing the items removed from Mr. and Mrs. Anderson's home specifically included the tote bag in question.

    Mr. and Mrs. Anderson filed a police report with the Aurora Police Department (report number 06-18998). Detective Darryl Moore discovered that the inventory tag documented as being on the tote bag had been removed and placed on a dust pan. Of the three men involved in the move, Detective Moore was able to interview two of them and concluded that they likely had no part in the theft. The third individual, a supervisor at Jackson at the time, refused to appear for an interview. It was later discovered that this supervisor has a criminal record.

    Mr. and Mrs. Anderson filed a claim with Jackson Moving & Storage in September of 2006, and he provided backup in the form of receipts and retail store names to Cathie Brakke, head of the claims department, in November of 2006. It was not until March 21, 2007, that Mr. Anderson met with Vivian Dumas, who replaced Ms. Brakke as head of the claims department, and she informed him that Ms. Brakke had dropped the ball and that they were now in the process of working on the claim, six months after it was first filed.

PLAINTIFF'S
EXHIBIT

tabbies

E

Allied Van Lines
July 5, 2007
Page 2

On May 7, 2007, a representative of the insurance company for Jackson contacted Mr. Anderson and notified him that the claim was not covered under the policy and that the claim had been sent back to Ms. Dumas and Jackson for internal follow-up with Allied Van Lines.

Despite having taken all the necessary steps to secure a claim, as of this date Jackson Moving & Storage and Allied Van Lines have made no attempts to make him whole.

Jackson negligently or intentionally hired a man with a criminal history as supervisor, a position which involves the handling of others' personal property. Jackson also negligently supervised the move, allowing for the misappropriation of the jewelry in question. Furthermore, the inventory evidences the fact that Jackson last had possession of the jewelry. Finally, Mr. Anderson was never informed the specific reasons for which his claim was denied by Jackson, an indication of potential bad faith on the part of Jackson.

We do not wish to incur the expense of litigation. Mr. and Mrs. Anderson has been frustrated at every turn. I am confident that a fact finder would find Jackson's behavior very serious. In an effort to avoid the filing of a lawsuit seeking compensation, punitive damages and attorneys fees, I request that you contact the undersigned within seven (7) days. If we do not hear from you, we will take all appropriate action.

Very truly yours,

HINSHAW & CULBERTSON LLP

Daniel M. Purdom

DMP/sv

cc:     Mr. and Mrs. Anderson

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 41 |
| Certified Fee | | 265 |
| Return Receipt Fee (Endorsement Required) | | 215 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 521 |

Postmark Here

Sent To   Allied Van Lines
Street, Apt. No.; 700 Oakmont Lane
or PO Box No.   Westmont, IL 60559
City, State, ZIP+4

7003 1680 0007 6160 9385

PS Form 3800, June 2002            See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Allied Van Lines
Claims Services Dept.
700 Oakmont Lane
Westmont, IL 60559

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   C. GALIES    B. Date of Delivery  7-6-07

C. Signature
X                                      ☐ Agent
                                       ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
   7003 1680 0007 6160 9385

PS Form 3811, July 1999        Domestic Return Receipt        102595-00-M-0952

# HINSHAW

Daniel M. Purdom
630-505-4110
dpurdom@hinshawlaw.com

ATTORNEYS AT LAW

4343 Commerce Court
Suite 415
Lisle, IL 60532-1099

630-505-0010
630-505-0059 (fax)
www.hinshawlaw.com

August 31, 2007

*Certified Mail*
*Return Receipt Requested*

Allied Van Lines
Claims Services Department
700 Oakmont Lane
Westmont, IL 60559

      *Re:*   *Jeffrey W. and Jean M. Anderson Claim*

Dear Sir/Madam:

    We have been retained to represent Jeffrey W. and Jean M. Anderson. Mr. and Mrs. Anderson engaged Jackson Moving & Storage, an agent of Allied Van Lines, for a move from Aurora, Illinois to Colorado in July of 2006. During the loading process, the movers were explicitly told that no luggage was to be loaded. After all the boxes had been loaded and the movers left, Mr. Anderson discovered that a tote bag which contained a substantial amount of valuable jewelry was missing.

    Mr. and Mrs. Anderson immediately contacted Jackson Moving & Storage and informed them that the tote bag had been loaded in error. Although Jackson indicated to Mr. Anderson that they were unable to locate the tote bag, a review of the documents listing the items removed from Mr. and Mrs. Anderson's home specifically included the tote bag in question.

    Mr. and Mrs. Anderson filed a police report with the Aurora Police Department (investigation number 06-18998). Detective Darryl Moore discovered that the inventory tag documented as being on the tote bag had been removed and placed on a dust pan. The Police Report clearly revealed that the supervisor hired by Jackson Moving & Storage, your agent, had a criminal history and refused to be interviewed.

    Mr. and Mrs. Anderson filed a claim with Jackson Moving & Storage in September of 2006, and he provided backup in the form of receipts and retail store names to Cathie Brakke, head of the claims department, in November of 2006. It was not until March 21, 2007, that Mr. Anderson met with Vivian Dumas, who replaced Ms. Brakke as head of the claims department, and she informed him that Ms. Brakke had dropped the ball and that they were now in the process of working on the claim, six months after it was first filed.

**PLAINTIFF'S
EXHIBIT
F**

20184120v1 878788

Allied Van Lines
August 31, 2007
Page 2

On May 7, 2007, a representative of the insurance company for Jackson contacted Mr. Anderson and notified him that the claim was not covered under the policy and that the claim had been sent back to Ms. Dumas and Jackson for internal follow-up with Allied Van Lines.

Despite having taken all the necessary steps to secure a claim, as of this date Jackson Moving & Storage and Allied Van Lines have made no attempts to make them whole.

Jackson negligently and intentionally hired a man with a criminal history as supervisor, a position which involves the handling of others' personal property. Jackson also negligently and intentionally supervised the move, allowing for the misappropriation of the jewelry in question. Furthermore, the inventory evidences the fact that Jackson last had possession of the jewelry. Finally, Mr. Anderson was never informed the specific reasons for which his claim was denied by Jackson, an indication of potential bad faith on the part of Jackson.

We do not wish to incur the expense of litigation. This is our second letter to you addressing this issue. We have been instructed to file suit on behalf of the Mr. and Mrs. Anderson. Prior to filing suit for damages of $66,000.00 equaling the value of the misappropriated jewelry, plus moving costs, attorneys fees and punitive damages, I request that you make payment of the entire amount so that we can avoid the expense of litigation. If you have any questions, please feel free to contact the undersigned. If I do not hear from you within seven (7) days, we will file suit for claims stated above, seeking damages, attorney fees, interest and all available remedies.

Very truly yours,

HINSHAW & CULBERTSON LLP

Daniel M. Purdom

DMP/sv

cc:    Mr. and Mrs. Anderson

20184120v1 876788

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To Allied Van Lines, Claims Dept
Street, Apt. No.; or PO Box No. 700 Oakmont Ln
City, State, ZIP+4 Westmont IL 60559

PS Form 3800, June 2002          See Reverse for Instructions

7003 1680 0007 6160 9781

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Allied Van Lines
Claims Department
700 Oakmont Ln.
Westmont, IL 60559

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)  CCHAS   B. Date of Delivery 9-4-07

C. Signature
X                                    ☐ Agent
                                     ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered       ☒ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
   7003 1680 0007 6160 9781

PS Form 3811, July 1999     Domestic Return Receipt     102595-00-M-0952